<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
NIURCA PEREZ,                          :     Honorable Madeline Cox Arleo
                                       :
         Plaintiff,                    :     Civil Action No. 09-6407 (SDW)
                                       :
     -v-                               :
                                       :     **REPORT AND RECOMMENDATION**
                                       :
MIDLAND FUNDING LLC, et al.,           :
                                       :
         Defendants.                   :
_____:

**ARLEO,** U.S.M.J.

Before the Court is the application of plaintiff Niurca Perez ("Perez") for attorneys' fees and costs (Dkt. No. 26). Defendants Midland Funding, LLC ("Midland") and Pressler & Pressler, LLP ("Pressler") (sometimes collectively "defendants") oppose the fee application. District Judge Wigenton referred Perez's application to me for Report and Recommendation. No oral argument was heard. FED. R. CIV. P. 78.

For the reasons set forth below, the Court respectfully recommends that Perez' fee application be **GRANTED** but that the amount of legal fees originally requested by her be reduced, and that defendants be ordered to pay $9,559.25 in fees and $1,053.97 in costs, totaling $10,613.22.

I.   <u>BACKGROUND</u>

This federal action arises from a related state court case, wherein Midland filed suit against Perez to collect an alleged outstanding debt. On September 29, 2008 Midland,

represented by Pressler, commenced the debt collection action in the Superior Court of Union County, New Jersey, Law Division, Special Civil Part ("state action"). Attorney Joseph Mullaney, III, Esq. ("Mr. Mullaney") defended Perez. According to Perez, defendants improperly filed the state action in New Jersey for a debt that Perez, a Florida resident, did not owe. She allegedly presented defendants with proof of her Florida residency and their mistake that she owed the debt.

Rather than dismiss the state court action, on March 13, 2009, Midland obtained default judgement against Perez in the amount of $1,157.25. On September 16, 2009, Perez moved to vacate the default judgement. On October 8, 2009, the state court vacated the default judgment and dismissed the action without prejudice.

On December 18, 2009, Mr. Mullaney, on behalf of plaintiff, filed the instant action, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. On January 7, 2010, defendants were served with copies of the summons and complaint. In January and February 2010, Mr. Mullaney and defense counsel engaged unsuccessfully in settlement discussions. In the interim, defendants sought four separate extensions of time to file an answer. The last extension set defendants' time to answer by May 12, 2010.

On April 9, 2010, Mr. Mullaney filed a consent motion for the pro hac vice admission of Florida based co-counsel, Leo Bueno, Esq. ("Mr. Bueno"). On April 16, 2010, the Court issued an Order granting the pro hac motion. On May 12, 2010, defendants filed their answers to the complaint.

On June 8, 2010, Mr. Mullaney and defense counsel appeared for an initial scheduling conference before the Court. At the conference, the parties reached a settlement which included

reasonable attorney's fees and costs.  The parties, however, agreed to submit the determination of reasonable fees and costs to the Court.  The instant motion followed.

**II.     APPLICATION FOR ATTORNEY'S FEES AND COSTS**

Perez seeks $12,109.99 in attorney's fees and $1,053.97 in costs for a total amount of $13,163.96, claiming to have spent in excess of 53 hours litigating this case.[1]  Defendants do not challenge the reasonableness of plaintiff's counsels' hourly rates.  Rather, defendants contest the number of hours reasonably spent performing the work, claiming the time expended was excessive, redundant, duplicative, and/or unnecessary.

**III.    ANALYSIS**

   **A.     Legal Standard**

Debt collectors who fail to comply with the FDCPA are liable to an aggrieved person in an amount equal to the sum of --

> (1) any actual damage sustained by such person as a result of such failure;
>
> (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000;
>
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1692k(a).

---

[1] In her moving papers, plaintiff originally sought $14,728.89 in fees and $1,053.97 in costs, totaling $15,782.86.  In her reply brief, plaintiff voluntarily reduced her requested total award to $13,163.96.

To determine the amount of reasonable attorney's fees, the Court must calculate the "lodestar" amount by multiplying the attorney's reasonable hourly rate by the number of hours reasonably spent. Interfaith Cmty. Org. v. Honeywell Intern, Inc., 426 F.3d 694, 703 (3d Cir. 2005). The prevailing party, here plaintiff, bears the burden of proving, through competent evidence, the reasonableness of the hours worked and rates claimed. Washington v. Philadelphia County Court, 89 F.3d 1031, 1035 (3d Cir. 1996). See Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). "If it wishes to challenge the fee award, the opposing party must then object 'with sufficient specificity' to the [fee] request." Interfaith Cmty. Org., 426 F.3d at 703 (quoting Rode, 892 F.2d at 1183). Once opposed, "the party requesting fees must demonstrate to the satisfaction of the court that its fee request is reasonable." Id.

The proper starting point for calculating the reasonable hourly rate is the "prevailing market rates in the relevant community." Interfaith Cmty. Org., 426 F.3d at 703. "[T]o determine 'the prevailing market rates in the relevant community,' a court must 'assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Interfaith Cmty. Org., 426 F.3d at 708 (quoting Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir.2001)).

The party requesting fees has the burden of demonstrating the reasonableness of the fees by submitting evidence of the appropriate hourly rate. Washington, 89 F.3d at 1035 (3d Cir. 1996). See Apple Corps. Ltd. v. Int'l Collectors Soc'y, 25 F. Supp.2d 480 (D.N.J. 1998) (reinforcing rule that party seeking fee award bears the burden of documenting number of hours worked and hourly rates claimed). In determining a reasonable hourly rate, the Court must first

4

examine "the attorney's usual billing rate, but this is not dispositive." Loughner, 260 F.3d at 180 (quoting Public Int. Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995)). The district court should "determine the currently prevailing rates in the community for comparable legal services at the time the fee petition was filed." Lanni v. New Jersey, 259 F.3d 146, 150 (3d Cir. 2001).

Once a reasonable hourly rate is determined, the Court must next consider whether the time expended is reasonable. The court should exclude "hours that are not 'reasonably expended' by virtue of excessiveness, redundancy, or lack of necessity." Mosaid Tech, Inc. v. Samsung Elecs. Co., 224 F.R.D. 595, 597 (D.N.J. 2004) (quoting Rode, 892 F.2d at 1183).

The court has significant discretion in determining the lodestar amount; however, once it is determined, the lodestar amount is presumably reasonable. Lanni, 259 F.3d at 149. See Rode 892 F.2d at 1183. After the lodestar amount has been calculated, either party may seek adjustment. Id. In its discretion, the court may increase or decrease the lodestar "'if the lodestar is not reasonable in light of the results obtained. This general reduction accounts for time spent litigating wholly or partially unsuccessful claims that are related to the litigation of the successful claims.'" Apple Corps Ltd., 25 F. Supp.2d at 485 (quoting Rode, 892 F.2d at 1183)).

B.   **Hourly Rates**

Consistent with the Third Circuit's directive, this Court first examines the reasonableness of the hourly rates of plaintiff's counsel and the firms' support staff. Here, the hourly rates for plaintiff's counsel and the support staff are as follows: Joseph A. Mullaney, III, Esq.- $265; Leo

5

Bueno, Esq.- $350; "JMC" - $100; and "KDR" - $100.[2]

In support of her request for attorneys' fees, plaintiff submits the certifications of both Mr. Mullaney and Mr. Bueno. In their certifications, Messrs. Mullaney and Bueno detail the number of years they have been practicing consumer rights law, their professional training in that discipline, their respective hourly rates, and work performed on this case. Additionally, Mr. Mullaney attaches the following to his certification: (1) the United States Consumer Law Attorney Fee Survey 2008-2009: Atlantic Region, ("CLA Fee Survey"); (2) the Laffey Matrix 2003-2010 ("Laffey Matrix"); and (3) the 2006-2007 "Range of Hourly Rates" published by Community Legal Services of Philadelphia, ("CLS Survey"). (Mullaney Cert., at Exhs. A-C). Mr. Bueno also attaches the CLA Fee Survey as well as a recent order from the United States District Court for the Southern District of Florida approving Mr. Bueno's hourly rate of $400 and granting in part his fee application. (Bueno Cert., at Exhs. D & E).

Consistent with the Third Circuit's reliance on the "forum rate rule," this Court finds that New Jersey is the relevant community for purposes of calculating the reasonable hourly rate in this case. See Interfaith Cmty. Org., 426 F.3d at 704. Accordingly, the proper inquiry is whether plaintiff's submissions satisfy her burden of showing the reasonableness of the requested hourly rates for Mr. Mullaney, his legal secretaries, and Mr. Bueno under the "forum rate rule."

The Court considers the three fee surveys on which plaintiff relies to determine the reasonableness of her counsels' and the support staff's hourly rates. The CLA Fee Survey

---

[2] In his supporting certification, Mr. Mullaney identifies his former legal secretary only by her initials, "JMC," and his current legal secretary by her initials, "KDR." (See Joseph Mullaney Cert., at ¶¶ 22, 25, and 28). Mr. Bueno does not seek reimbursement for the time expended by his former paralegal Nayle Sanchez. (See Leo Bueno Cert., at ¶ 13).

includes New Jersey, among those states in the Atlantic Region, for which average billing rates have been determined.  For Atlantic Region Firms during 2008-2009, the average hourly billing rate for attorneys practicing consumer law between six and ten years was $266.  Here, Mr. Mullaney's hourly billing rate is $265, and thus is comparable to the average rate of $266 in the CLA Fee Survey.[3]

In the CLA Fee Survey, the average hourly billing rate for attorneys practicing consumer law between twenty-one and twenty-five years is $312[4].  Here, even assuming that Mr. Bueno has been practicing consumer rights law for the majority of his career, his hourly fee rate of $350 appears to be higher than the average hourly rate in the CLA Fee Survey for the 2008-2009 results.

Plaintiff does not cite to any cases from courts within this Circuit to demonstrate the judiciary's reliance on the CLA Fee Survey in determining the reasonableness of fees and billing rates in consumer rights litigation.  Yet, this Court's own research has revealed three recent cases in this Circuit that have reached conflicting results concerning the reliability of the CLA Fee Survey.  See, e.g., Lindenbaum v. NCO Financial Systems, Inc., No. 11-CV-264, 2011 WL 2848748, at *2 (E.D. Pa. Jul. 19, 2011) (relying, in part, on the CLA Fee Survey market billing

---

[3] The CLA Fee Survey does not provide any analysis of hourly billing rates for legal secretaries, and plaintiff offers no other evidence.  As such, plaintiff has not provided the Court with sufficient evidence demonstrating the reasonableness of Mr. Mullaney's secretary's billing rate.  Thus, plaintiff is not entitled to reimbursement for any time expended by Mr. Mullaney's secretary.

[4] As detailed in his certification and resume, Mr. Bueno was admitted to practice law in 1987, and thus, has been practicing for approximately 24 years.  Yet, based on his resume, it is unclear the number of years that he has primarily practiced consumer rights law.  (Bueno Cert., and at Exh. A).

rates in the Philadelphia area for attorneys and paralegals at different levels of experience, to conclude that counsel's rates appeared to be reasonable); Alexander v. NCO Financial Systems, Inc., No. 11-CV-401, 2011 WL 2415156, at *4-5 (E.D. Pa. Jun. 16, 2011) (noting that Court will use the CLS Survey as the more relevant source of the market rates, rather than either the CLA Fee Survey or Laffey Matrix, to determine the reasonableness of counsel's hourly rates); Williams v. NCO Financial Systems, Inc., No. 10-CV-5766, 2011 U.S. Dist. LEXIS 50635, at *14 (E.D. Pa. May 11, 2011) (finding that the CLS Survey contains the more relevant market rates, and that no court has relied on the CLA Fee Survey to determine reasonableness of billing rates).

Notwithstanding this conflict, the Court notes that courts within this District have recently determined that a range of hourly fee rates in consumer law actions, comparable to the one Mr. Mullaney has requested in this case, was reasonable. See Ford v. Consigned Debts & Collections, Inc., No. 09-3102, 2010 WL 5392643, at *8 (D.N.J. Dec. 21, 2010) (Judge Hillman noting that in FDCPA action fees based on a range from $300 to $200 were reasonable hourly rates). On the other hand, Mr. Bueno's hourly fee rate of $350 appears to be higher than the average rate in the CLA Fee Survey ($321) and approved recently by courts in this district. See Stair v. Thomas & Cook, No. 06-CV-4454, 2009 WL 1635346, at *3 n.4-5 (D.N.J. Jun. 10, 2009) (Judge Simandle determining that an hourly billing rate of $325 for attorneys practicing consumer law for 16 and 17 years was reasonable). See also Ford, 2010 WL 5392643, at *8.

In short, based on the supporting certifications, CLA Fee Survey and relevant case law,[5]

---

[5] Although plaintiff also relies on the Laffey Matrix and the CLS Survey, the Court declines to rely on these sources in determining the reasonableness of plaintiff's counsels' hourly rates. The Laffey Matrix is typically used by the United States Attorney for the District of

this Court is satisfied that plaintiff has proffered sufficient evidence indicating that her requested hourly rate of $265 for Mr. Mullaney is reasonable and that a slight downward departure of Mr. Bueno's hourly rate, from $350 to $325, is warranted.

### C.  Time Expended

Once a reasonable hourly rate is determined, the Court must next consider whether the time expended is reasonable. Defendants contend that much of the work performed by the plaintiff's counsel, totaling more than 53 hours, was excessive, redundant and otherwise unnecessary.

Defendants claim that the legal work performed by Mr. Mullaney and Mr. Bueno is duplicative and wasteful, especially given the simplicity of the lawsuit, the minimal amount of legal work performed related to the FDCPA action, and the parties' agreement to settle the case in its infancy. Defendants specifically argue that plaintiff's counsel expended an excessive and/or unnecessary number of hours performing the following tasks: drafting the Complaint; preparing and filing the pro hac motion papers; reviewing defendants' Answers; preparing Rule 26 disclosures and a proposed discovery plan; investigating plaintiff's unproven damages; researching the undersigned; and engaging in numerous client meetings.

---

Columbia.  Jefferson v. City of Camden, No. 01-4218, 2006 WL 1843178, at *17 n.18 (D.N.J. Jun. 30, 2006).  While plaintiff has not cited to any legal authority to warrant reliance on the Laffey Matrix, this Court notes that the Third Circuit has not cited approvingly to the use of the Laffey Matrix in determining hourly rates in markets within the Third Circuit.  Id. (citing Interfaith Cmty. Org., 426 F.3d at 710 n. 14).  See Williams, 2011 U.S. Dist. LEXIS 50635, at *14.  But see Ford, 2010 WL 5392643, at *8 (in finding counsel's billing rates reasonable, court noted, in part, that counsel's rates were consistent with hourly rates set forth in the Laffey Matrix).  Additionally, the CLS Survey was established by a Philadelphia-based organization, and thus, has been approved by the Third Circuit and the Eastern District of Pennsylvania as accurately reflecting prevailing rates in Philadelphia, not New Jersey.  Williams, 2011 U.S. Dist. LEXIS 50635, at *13-14 (citing Maldonado, 256 F.3d at 181).

Defendants also challenge Mr. Mullaney's travel time to the Rule 16 conference and the use of Mr. Bueno to perform simple legal tasks. Finally, defendants claim that certain billing entries are vague and confusing, making it impossible to determine the reasonableness of the work performed. As such, defendants assert that Perez is entitled to only a $4,000 fee award, representing 15 hours of only Mr. Mullaney's time at an hourly rate of $265.

As detailed below, the Court finds that Perez is entitled to reimbursement for the majority of work performed by Mr. Mullaney and Mr. Bueno, but that a reduction of the award is warranted. Some of the tasks at hand did not justify the efforts of two seasoned attorneys with more than twenty years of consumer law experience between them. Furthermore, some of the work was unnecessarily performed at this early stage of the proceedings and it did not influence the settlement reached early in this case. Although the parties agreed to include an award of attorney's fees and costs as part of the settlement, the controlling standard is that the Court award <u>reasonable</u> fees and costs.

Indeed, in her fee petition, plaintiff acknowledges there was some "inherent" duplication of work performed by her two attorneys and voluntarily reduced the total amount sought by approximately 20%. Perez does not claim that the legal issues related to this FDCPA action were complex or novel. Instead, Perez asserts that Mr. Bueno was her attorney, but she needed to retain local counsel to bring the FDCPA action properly venued in New Jersey on her behalf. Furthermore, as Perez does not speak English, Mr. Bueno and his support staff were needed to translate attorney-client communications between Perez and Mr. Mullaney.

While Perez is entitled to retain more than one attorney to represent her interests in the

instant action,[6] the Court notes that this is a straight forward FDCPA action that the parties amicably resolved at the initial scheduling conference.  Furthermore, this FDCPA action was based on the related state court debt action during which Mr. Mullaney represented Perez, and thus, presumably was familiar with the underlying facts that served as a basis for the FDCPA action.  As such, this Court finds that the 18 hours spent collectively by Messrs. Mullaney and Bueno pre-suit was excessive.  This Court will not allow an award of fees based on attorneys unreasonably performing the same work, the performance of unnecessary work, or expending an unreasonable number of hours on simple straightforward tasks.  See Rode, 892 F.2d at 1187, 1192 (determining that "[h]ours are excessive if they represent more time than is reasonably necessary to complete the task" and a reduction for duplicative work "'is warranted only if the attorneys are unreasonably doing the same work.'") (internal quotation omitted).

Having carefully reviewed counsels' billing entries, the Court makes the following additional observations.  Contrary to defendants' assertions, telephone conferences between co-counsel and/or between them and their client were necessary both before and after the suit was filed especially given the geographical distance between Mr. Mullaney and Perez as well as the language barrier that existed between them.

Furthermore, this Court rejects defendants' contention that any work performed before September 12, 2009 was related solely to the state court debt action, and thus, has not been

---

[6] The Court rejects defendant's argument that plaintiff is not entitled to be reimbursed for any of Mr. Bueno's time spent working on the action.  First, defendant consented to Mr. Bueno's pro hac vice admission.  Second, as plaintiffs' counsel's billing records reflect, defense counsel spoke directly with Mr. Bueno concerning settlement negotiations and plaintiff's alleged proof of damages.  Accordingly, defendant cannot not now claim that Mr. Bueno should not be reimbursed for any work performed.

properly allocated to the federal action. A review of the billing entries reveals that plaintiff's counsels' pre-September 12, 2009 entries relate to work performed on the FDCPA prior to filing suit in December 2009. In any event, to the extent such time entries reflect work performed in connection with the state court action, the instant FDCPA action arises from Midland's refusal to voluntarily dismiss the underlying state court action. Accordingly, counsel's work reasonably performed on both lawsuits is related and thus warranted, although excessive as previously discussed.

The Court also finds that plaintiff's counsel necessarily expended time drafting the Complaint, preparing and filing the pro hac motion papers, reviewing and responding to defendants' Answers, and preparing Rule 26 disclosures and a proposed discovery plan in anticipation of the Rule 16 conference and before any settlement was reached. Nonetheless, the billing records reflect some duplication of efforts and co-counsel together unreasonably spending more than 20 hours on these tasks. Furthermore, after carefully reviewing the billing records, it appears that both Mr. Mullaney and Mr. Bueno had settlement discussions with defense counsel and billed time for reviewing the same correspondence and orders from the Court and defense counsel.

Additionally, the Court agrees with defendants that Perez should not be awarded for her counsels' time spent investigating and gathering evidence of her actual damages. Plaintiff produced no proof of any such damages to defendants. As such, any such alleged investigation of damages did not influence the settlement reached in this action, and thus was not necessary at this early stage.

However, the Court rejects defendants' general contention that Mr. Mullaney's and Mr. Bueno's time entries for "3.4 hours" are vague, making it difficult to determine the reasonableness of the work performed. First, defendants do not adequately identify the specific time entries that they challenge based on vagueness. Second, based on its review of all the billing entries, the Court does not find that any of the work performed is vaguely described.

In connection with any reimbursement for travel time, defendants contend that Mr. Mullaney should not be reimbursed for time spent traveling to and from the Rule 16 conference, claiming that Mr. Mullaney could have participated by telephone. This Court disagrees. As part of its standing orders, the Court routinely requires attorneys to appear in person for initial scheduling conferences. In any event, Mr. Mullaney voluntarily reduced his travel time hourly rate by half, which this Court finds is reasonable.

Finally, plaintiff's counsel request leave to file a supplemental petition seeking reimbursement for their time spent preparing the instant fee application. Defendant opposes this request. Given that the fee application is not very comprehensive and there was no oral argument, the Court, in its discretion, will allow five hours total (four hours for Mr. Mullaney at the hourly rate of $265 and one hour for Mr. Bueno at the hourly rate of $325) for preparation of the fee petition. Although this amount is lower than what plaintiff's counsel presumably would have sought, the Court is satisfied that such a modest fee award is reasonable and fair under the circumstances and proportionate to the entire fee application which could not have been too burdensome to prepare. See Maldonado, 256 F.3d at 187 (allowing reimbursement for fee petition, but reducing the number of hours allowed due to excessiveness).

## IV.  CONCLUSION

In light of the foregoing, the Court hereby respectfully recommends that Perez's fee application be **GRANTED** but that the total legal fees sought for work performed by Messrs. Mullaney and Bueno before the settlement, respectively, be reduced another 25% consistent with this Court's findings herein.  The Court further respectfully recommends that Messrs. Mullaney and Bueno be awarded a total of five hours for time expended preparing the instant fee application.  Accordingly, the Court concludes that plaintiff should be reimbursed by defendants for reasonable attorneys' fees and costs as follows:

Mr. Mullaney: $4,413.15 (for fees pre-settlement)

$1,060.00 (for fees preparing fee petition)

+ $684.97 (for costs)

$6,158.12 (total award for Mr. Mullaney's time)

Mr. Bueno: $3,761.10 (for fees pre-settlement)

$325.00 (for fees preparing fee petition)

+ $369.00 (for costs)

$4,455.10[7] (total award for Mr. Bueno's time)

Total Award: $9,559.25 (for fees) + $1,053.97 (for costs) = $10,613.22 (total)

---

[7] The Court notes that the total award for Mr. Bueno's fees and costs is similar to the $4,480.00 reduced award that Mr. Bueno received in connection with his motion for fees and costs that a district judge in the Southern District of Florida granted in part. (See Bueno Cert., at Exh. E).

The parties have fourteen (14) days from receipt hereof to file and serve objections.

        *s/Madeline Cox Arleo*        
        **MADELINE COX ARLEO**
        **United States Magistrate Judge**

Dated: August 11, 2011

cc:    Hon. Susan D. Wigenton, U.S.D.J.
       Clerk
       All Parties
       File